Johnson, J.
The record contains considerable testimony which was offered touching the contentions of the different parties. The results of extensive exáminations by experts, officers of the Gas Company and other witnesses were produced. We have also had the benefit of the written opinion of the Commission, from which it appears that that body in the consideration of the case proceeded in compliance with the requirements of the statute which defines its duties. In the effort to arrive at a just and reasonable rate as required by the statute, it ascertained values, costs, expenses, depreciation and the other elements which are essential to approximating a correct result.
Before this court will interfere with an order of the Public Utilities Commission it must appear from a consideration of the record that its action *682 was unlawful or unreasonable. From a careful examination of the evidence and briefs of counsel we are not able to say that the order of the Commission, fixing the rate which the Company was entitled to charge for gas at 36 cents per thousand cubic feet, with a discount of two cents per thous- and if paid on or before the 10th day of the month, was unreasonable or unlawful. We think that portion of its order was sustained by the evidence. The reasons given by the Commission in its opinion are convincing and are sufficient on that part of its order. But the order contains the further provision that there shall be paid “in addition thereto, a readiness to serve charge, to the distributing company of twenty cents per meter per month.”
The city contends that the inclusion of the charge referred to is unreasonable and unlawful. It must be conceded that there has been considerable confusion and inaptness in the use of the terms, “minimum charge” and “readiness to serve,” in connection with public utilities rate-fixing. The terminology involved in the entire subject is as yet too indefinite and extensive. But there is not much dispute concerning the meaning of the term “minimum charge,” as applied to that service. In substance it means the minimum monthly bill which will be rendered regardless of whether or not the consumer has used sufficient of the commodity to make up that sum at the agreed rate. If the consumer uses as much of the gas as will make up this minimum charge, or more, the minimum charge is absorbed in that sum. It means simply that the consumer binds himself to *683 pay for “at least” so much of the commodity during each month. It is manifest that the main purpose of the minimum charge is to make sure that each consumer shall bear a proper proportion of ■the expense incurred in the furnishing of the commodity or service. The consumer having become a customer of the company simply stands in the attitude of having agreed that he will pay for “at least” so much per month whether he has used that much or not. It is easy to understand that many customers do not at. times use sufficient service to incur a bill large enough to meet their proper part of the fixed expenses of the Company in furnishing the service. It seems clear, therefore, that a minimum charge is not only necessary to compensate the Company, but that' it is equitable and just as between the Company and all of the consumers taken collectively. As to the “readiness to serve charge,” while there is some difference in the statements of different experts and other authorities and reported cases, there is general agreement that the “readiness" to serve charge” has been understood to cover the cost incurred by the utility in holding itself in constant readiness to render the service without reference to the delivery of any of the commodity or the rendering of any of the service, it being understood that for the actual commodity or service rendered or used payment shall be made by additional rate schedule.
Now, as stated, the order of the Commission in this case, after fixing the rate of 36 cents per thousand, is that there shall be “in addition thereto a readiness to serve charge to the distributing com *684 pany of twenty cents per meter per month.” It will be observed that there is in this clause the simple provision that there shall be paid to the company twenty cents per meter per month in addition to the amount due for gas used. There is nothing in addition to this to indicate what is meant by the term “readiness to serve charge.”
Section 9329, General Code, contains the provision that no gas company shall charge rent for meters.
Section 3982, General Code, provides that the council may regulate and fix the price which such companies shall charge for the rent of their meters, and such ordinance may provide that such price shall include the use of meters to be furnished by the companies, and in such case meters shall be furnished and kept in repair by the company and no separate charge shall be made either directly or indirectly for the use or repair of them.
In the ordinance -appealed from there was a provision that the company might collect as a “readiness to serve charge” for each meter, each month, such sum as added to the net gas bill for such month will make a total of twenty-five cents, but if the net gas bill registered by the meter for any one month amounts to twenty-five cents or more no readiness to serve charge shall be charged during said month.
It will be observed that this is simply and only a minimum charge; that is, that each customer agrees to pay at least twenty-five cents a month. If he uses that or more there is no ready to serve charge, but it is absorbed in the bill. But in the *685 order of the commission it is provided that in addition to the rate fixed there shall be a “readiness to serve charge” of twenty cents per meter per month, which is of course a very different thing. Whatever the bill for any month may be the charge is added.
By the provisions of Section 614-44, General Code, the city of Ashtabula was empowered to fix the rate and do the things provided for in Sections 3982 and 3983, General Code. These sections provide that the council may from time to time regulate the price of gas, etc., and also contain the provision as to regulating the charge for meters which is above referred to. . The ordinance did not regulate or fix the price which the company could charge for the rent of meters. In legal effect it simply provided for a rate to be charged for gas, and required the use of at least so much at that rate. That ordinance was the thing appealed from.
Section 614-46 provides that if the commission shall be of the opinion that the rate, etc., so fixed by ordinance, is or will be unjust or unreasonable or insufficient to yield reasonable compensation, it shall under the conditions set forth in detail in the section proceed to fix and determine the just and reasonable rate, etc., to be charged during the time fixed by the ordinance. In this case the order of the commission not only found that the rate fixed by the ordinance was unjust and unreasonable and fixed a rate which it found to be just and reasonable, but made the additional charge described.
*686 It is contended that by the provisions of Section 614-17 authority was given to make the addition of the “readiness to serve charge” referred to. That section contains the provision that nothing in the act shall be taken to prohibit a public utility from entering into any reasonable arrangement with its customers, consumers or employes for the division or distribution of its surplus profits, or providing for a sliding scale of charges, or providing for a minimum charge for service to be rendered, unless such minimum charge is made or prohibited by the terms of the franchise, grant or ordinance under which the utility is operated, the classification of service based upon the quantity •used, the time when.used, the purpose for which used, duration of use and any other consideration, or providing any other financial device that may be practicable or advantageous to the parties interested.
The section provides that such arrangement, etc., shall be first filed with the commission and approved by it before it is effective. It will be observed that by this section there is an express provision allowing a minimum charge, unless it is made or prohibited by the ordinance under which the utility is operated. There is no mention of a provision for a “readiness to serve charge,” and the presumption is that none was intended to be included or implied, unless the language “providing any other financial device” permits a readiness to serve charge. This language, “any other financial device that may be practicable or advantageous to the parties interested,” is extremely vague and in *687 definite, and we do not feel warranted to hold that the legislature intended by' such language to grant the privilege to make material additioffif-&) the just and reasonable rate which the public is required to pay for the service of the public utility, which just and reasonable rate is fixed (when appeal is taken from ordinances fixing rates) by the Commission in the specific manner laid down in Section 614-46, General Code. As we have seen, the minimum charge, which is provided for with due regard to the circumstances, is just and reasonable.
Moreover, as pointed out, Section 614-17, General Code, above referred to, contains an express provision allowing a minimum charge “unless made or prohibited by the ordinance.” This ordinance contains what is in effect a minimum charge, though it is denominated a readiness to serve charge in the ordinance. It is “made by the ordinance” and cannot be made by the company in its own schedule. This conclusion follows from the plain implication of the statute.
The Commission found that the rates fixed by the ordinance were unjust and unreasonable. As pointed out, it ordered that the rate should be fixed at not exceeding 36 cents per thousand feet, and in addition thereto a readiness to serve charge of 20 cents per meter per month. The effect of this was to set aside the minimum charge fixed by the ordinance and to insert in its place the readiness to serve charge referred to.
We think it clear that the, portion of the Commission’s order touching the readiness to serve charge and setting aside the minimum charge was *688 not, under the facts and circumstances of this case, authorized by our statutes. And it is well settled that the Cggfmission has only such authority as is conferred by the statutes which created it and which define its powers and duties.
—Decided June 7, 1921.)
The order of the Commission will be modified by striking out the portion thereof which refers to the readiness to serve charge and inserting therein that portion of the ordinance in question which follows the clause fixing the rate, and as thus modified the order of the Commission will be affirmed.

Order modified and affirmed as modified.

Nichols, C. J., Wanamaker and Robinson, JJ., concur.
Matthias, J., concurs in the judgment.
Merrell, J., not participating.